UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIK KELLGREN, Individually and on Behalf of All Other Persons Similarly Situated , | Case No.:  13cv644 L (KSC) |
| Plaintiff, | **ORDER GRANTING MOTION FOR CONDITIONAL COLLECIVE ACTION CERTIFICATION [ECF No. 60]** |
| v. | |
| PETCO ANIMAL SUPPLIES, INC., et al., | |
| Defendant. | |

Pending before the Court is Plaintiff Erik Kellgren's motion for conditional collective action certification under § 216(b) of the Fair Labor Standards Act ("FLSA"). The motion has been fully briefed and is decided on the papers submitted without oral argument. For the following reasons, the Court **GRANTS** Plaintiff's motion.

## I.      BACKGROUND

Defendants Petco Animal Supplies, Inc. and Petco Holdings, Inc. (together, "Defendant" or "Petco")[1] markets and sells animals, pet services, pet food and pet

---

[1]      Defendant Petco Holdings, Inc. is the parent entity of Petco Animal Supplies, Inc. (Schwimmer Decl. ¶ 1.)

supplies throughout the United States. (Schwimmer Decl. ¶ 1, [EFC No. 72-3]); (Def.'s Opp'n 2.) On March 19, 2013, Plaintiff Erik Kellgren[2], individually and on behalf of all others similarly situated, initiated a FLSA collective action against his former employer, Defendant Petco. On September 25, 2013, Plaintiff Kellgren filed a First Amended Complaint ("FAC") containing more factual allegations of willfulness. Plaintiff Kellgren alleges that Defendant willfully failed to pay overtime wages to him and potential collective action members who regularly worked over forty hours per week, in violation of the Fair Labor Standards Act ("FLSA").

Under theFLSA, employers must pay employees one and one-half times their regular rates of pay for all hours worked in excess of forty hours per workweek, unless the employees are classified as "exempt" under certain categories. 29 U.S.C. § 207. Petco Assistant Store Managers ("ASMs") are classified as exempt under the executive exemption provided for in 29 U.S.C. § 213(a)(1). (Schwimmer Dec. ¶ 19). Petco currently employs 775 ASMs nationwide. (*Id*. ¶ 22.)

Plaintiff Kellgren is among the numerous current and former Petco employees who were employed as ASMs at Petco locations across the U.S. and were classified as exempt under § 216(b) of the FLSA. Plaintiff Kellgren worked for Defendant from 2007 until October of 2010 as an ASM at various Petco stores in Illinois. On April 11, 2013, Plaintiff Jean Windham joined the lawsuit as an Opt-in Plaintiff pursuant to § 216(b) of the FLSA. (*Notice of Consent to Become a Party Plaintiff*, [EFC No. 5].) On November 11, 2014, Plaintiff Patricia Aex also joined the suit as an Opt-in Plaintiff. (*Notice of Consent to Become a Party Plaintiff*, [EFC. No. 51].)

Plaintiff alleges that Defendant willfully and improperly classified him, and others

---

[2]     Though Plaintiffs Jean Windham and Patricia Aex have opted-in to the putative class, neither have been added to the complaint as plaintiffs yet. Until the court conditionally certifies the collective action, Windham and Aex do not have plaintiff status. *Beery v. Quest Diagnostics, Inc.*, No. 12-cv-00231 (KM)(MCA), 2013 WL 3441792 (D.N.J. July 3, 2013). Therefore, Plaintiff Kellgren will be considered the sole movant.

similarly situated, as "exempt" under the FLSA. During his time working as an ASM for Defendant, plaintiff states he performed primarily non-managerial duties. Plaintiff asserts that he was denied overtime pay for all hours worked in excess of forty per workweek as a result of Defendant's allegedly willful misclassification. Plaintiff seeks unpaid wages, punitive damages and declaratory judgment for himself, and for similarly situated Petco ASMs.

On March 10, 2015, Plaintiff moved to have the collective action conditionally certified under § 216(b) of the FLSA on behalf of all ASMs employed by Defendant throughout the United States (except California) at any time from March 19, 2010 to the present ("the Collective Action Period"). Plaintiff also requests the Court compel Defendant to produce the contact information of all ASMs employed during the Collective Action Period, so that similarly situated former and current ASMs can be notified of this lawsuit. Defendant opposes the motion arguing that Plaintiff has not met the standard for conditional collective action certification.

## II.   LEGAL STANDARD

### A.   Conditional Collective Action Certification

The FLSA provides employees with a private right of action to enforce the minimum wage and overtime provision of the FLSA. 29 U.S.C. § 216(b). Employees may bring an action, not only on their own behalf, but also on behalf of "other employees similarly situated" through a collective action. *Id*. Unlike class actions brought under Federal Rule of Civil Procedure 23, the statute requires putative plaintiffs to "opt-in" to a collective action by giving written consent. *Id*.

The term "similarly situated," is not defined by the FLSA, and there is no Ninth Circuit precedent interpreting the term. *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007). However, district courts have discretion to determine whether a suit is appropriately maintained as an FLSA collective action. *Graham v. Overland Solutions, Inc.*, No. 10-cv-672-BEN (BLM), 2011 WL 1769737, at *2 (S.D. Cal. May 9, 2011); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004); *Hensley*

1   *v. Eppendorf N. Am., Inc*., 2014 WL 2566144, at *2 (S.D. Cal. June 5, 2014); *Trinh v. JP*

2   *Morgan Chase & Co.*, No. 07-cv-1666-W (WMC), 2008 WL 1860161, at *3 (S.D. Cal.

3   April 22, 2008). District courts in the Ninth Circuit use a two-step method to determine

4   whether employees are "similarly situated." *Id*. At the first stage, or the "notice" stage,

5   the court makes an "initial determination" whether to conditionally certify the class in

6   order to notify potential class members. *Leuthold*, 224 F.R.D. at 467. At the second stage,

7   typically after the close of discovery, the court re-evaluates certification and applies a

8   more rigorous analysis. Plaintiffs' motion concerns only the first step.

9         The plaintiff carries the burden of showing that members of the proposed class are

10   similarly situated. *Graham*, 2011 WL 1769737, at *2; *Hensley*, 2014 WL 2566144, at *2.

11   At the initial stage, the standard is a "lenient one that typically results in certification."

12   *Graham*, 2011 WL 1769737, at *2; (quoting *Hill v. R+L Carriers, Inc*., 690 F. Supp 2d

13   1001, 1009 (N.D. Cal. 2010)). At this stage, a plaintiff need only provide substantial

14   allegations, supported by declarations or discovery,  that their claims arise out of a

15   common decision, policy or plan that leads to FLSA violations. *Hensley*, 2014 WL

16   2566144, at *2; *Trinh*, 2008 WL 1860161, at *3; *Sperling v. Hoffman-LaRoche, Inc*., 118

17   F.R.D. 392, 407 (D.N.J. 1988). A plaintiff must establish a "factual basis beyond the

18   mere averments in [his] complaint for the class allegations." *Adams*, 242 F.R.D. at 536

19   (citation omitted). Generally, an allegation of an "overarching policy" is sufficient. *Smith*

20   *v. Micron Electronics, Inc.*, 2005 WL 5336571, at *2 (D. Idaho Feb. 4, 2005).

21         The standard for conditional collective action certification is "considerably less

22   stringent" than that required under Federal Rule of Civil Procedure 23. *Hill*, 690 F. Supp.

23   2d at 1009. The potential collective's claims must only share "some identifiable factual or

24   legal nexus that binds [their] claims in a way that hearing the claims together promotes

25   judicial efficiency and comports with the broad remedial policies underlying the FLSA."

26   *Id*. (quoting *Wertheim v. Ariz.*, 1993 WL 603552, at *1 (D. Ariz. Sept. 30, 1993)). The

27   leniency of the standard is due partly to the limited amount of evidence that is available at

28   the early stage on the litigation. *Leuthold*, 224 F.R.D. at 467. However, certification at

the first stage is merely conditional. *Hensley*, 2014 WL 2566144 at *5. If appropriate, the Court may de-certify the class at the later stage when more evidence is available and a more stringent analysis is performed. *Id*.

## I.   DISCUSSION

### A.   Substantial Allegations and Similarly Situated

The determination of whether proposed collective action members are similarly situated is fact-specific. *Hensley*, 2014 WL 2566144 at *6; *Trinh*, 2008 WL 1860161, at *3. Courts use their discretion when examining the particular allegations and relevant circumstances of a case to determine whether a plaintiff sufficiently demonstrated potential members are similar. *Id*. For instance, in *Hensley*, the plaintiff's declaration of his own experience as well as an employee manual detailing the company's procedures and job descriptions was sufficient factual support to warrant conditional certification. *Hensley*, 2014 WL 2566144, at *4.  In contrast, in *Trinh*, the plaintiffs did not satisfy the "modest factual showing" required because they offered no evidence of similarities between employees in compensation, training, or job duties beyond their own affidavits. *Trinh*, 2008 WL 1860161, at *4.

Here, the written job description for the ASM position disseminated by Petco's company headquarters establishes that Petco's ASMs maintain the same, company-wide job description. (*See* ASM Job Description. Exh. F.) This is further supported by the deposition of Petco's corporate designee, Lance Schwimmer. (*See* Schwimmer Depo at 77, Pl.'s Exh. A.) Schwimmer's testimony also highlights that all Petco ASMs participate in the same training program in order to ensure uniformity in Petco stores across the country. *Id*. at 94, 99-101. The Assistant Manager Training Guide is the singular training manual provided by Defendant to train all ASMs nationwide. *Id*. Additionally, the testimony of the Plaintiff and two Opt-in Plaintiffs establishes that not only were ASMs subject to the same company-wide job description and corporate policies, but that they also performed similar tasks and duties while working as ASMs. (*See* Kellgren Depo. at 292-96, Pl.'s Exh. B; Windham Depo. at 277-79, Pl.'s Exh. C; Aex Depo at 280, 309 Pl.'s

Exh. D.)

Moreover, Plaintiff has also advanced factual support establishing that Petco's ASMs are subject to a uniform compensation scheme. Lance Schwimmer's testimony affirms that all of Petco's ASMs are classified as exempt from the FLSA's overtime provisions and are paid on a salaried basis. (Schwimmer Depo at 72-74, 133-138.) Defendant argues that the classification of employees as exempt under the FLSA has been "resoundingly rejected by the courts" as evidence of an unlawful policy, plan or practice that renders putative class members similarly situated. (Def's Opp'n 16.) Although the exemption status may not alone establish that potential class members are similarly situated, Plaintiff has advanced a range of evidence beyond ASMs' exempt status to demonstrate similarity, as discussed above. Plaintiff has provided more factual evidence than the plaintiffs in *Hensley* and *Trinh*. 2014 WL 2566144, at *4.

Defendant also contends that Plaintiff has not demonstrated sufficient similarity because of individual differences between the "on-the-job experiences" between the named Plaintiff and the two Opt-ins. Specifically, Defendant argues that its uniform ASM training program cannot be used to establish similarity because Plaintiff Kellgren and Plaintiff Windham did not participate in the program, and Plaintiff Aex was trained by a store trainer. Defendant also argues that Plaintiff's showing of similarity between ASMs is negated by Plaintiff Kellgren and the Opt-in Plaintiffs having performed different kinds of non-managerial duties. However, the training manual establishes that Defendant seeks uniformity between ASMs nationwide, and the formal ASM job description establishes that ASMs work in the same manner. Therefore, the particular differences between the named Plaintiff's and the Opt-in Plaintiffs' experiences do not contradict the similarity in treatment of potential class members as a whole by the Defendant.[3]  And as plaintiff

---

[3]     An individualized analysis of the plaintiffs can be more accurately accomplished at a later stage the certification process when more discovery is available. *Hensley*, 2014 WL 2566144, at *7 ("[T]he disparate factual and employment setting of the individual plaintiffs are appropriately considered at the second stage.") (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001)).

13cv644 L (KSC)

correctly notes, conditional certification only requires showing that potential putative class members are similarly situated, not identically situated.

For the foregoing reasons, the Court concludes that Plaintiff provided "substantial allegations" that he and potential Opt-in ASMs are similarly situated, given that they are subject to the same company-wide policies, perform similar job duties, and are compensated in the same manner. Therefore, Plaintiff has met the factual burden required to warrant conditional collective action certification at the first stage.

## B.   Improper Classification

Defendant next argues that Plaintiff failed to show he is similarly situated to potential class members with respect to performing primarily non-exempt duties as an ASM, the alleged violation of the FLSA Plaintiff counters that he need only show the potential members of the collective are commonly affected by Defendant's ASM policies, not that such policies are unlawful. (Pl.'s Reply 4-5.) Plaintiff further argues that the issue of whether ASMs are misclassified is more appropriately addressed at the second stage of the certification analysis, after more discovery is available. (*Id.* 5-7.) The Court agrees..

The purpose of the first stage of collective action certification is to determine whether potential class members are similarly situated such that notifying potential class members is appropriate and promotes judicial efficiency. *Hill*, 690 F.Supp 2d at 1009. Disparate factual and employment settings are considered at the second stage of the two-tiered analysis. *Thiessen*, F.3d at 1103. During this preliminary stage, courts may examine the extent to which proposed plaintiffs will rely on common evidence and the level of individualized inquiries required when deciding whether to conditionally certify a collective action. *Trinh*, 2008 WL 1860161 at *5.

However, considerations involving the merits of claims are more appropriately addressed at the second stage of the analysis when less facts are in dispute. *Id.* ("[T]he Court is not opining whether Plaintiffs, or any other loan officers, have meritorious claims to overtime compensation; rather, the Court is examining the legal backdrop and type of evidence required to prove whether any employee is exempt or not."); *Hensley*,

2014 WL 2566144 at *6 ("This Court will not make such a determination based on disputed facts, where the employee-plaintiff has not yet had a chance to obtain fair discovery that is likely needed to respond.")

Thus, courts in this district routinely choose not to address arguments pertaining to the merits of claims during the first stage of the collective action certification analysis. *See Hensley*, 2014 WL 2566144 at *6 (declining to evaluate whether the plaintiff's work experience was different from other employees because the inquiry threatened to require the court to "improperly and prematurely determine the merits"); *Adams*, 242 F.R.D. at 539 (refusing to exclude certain employees from the collective class because determining whether they were compensated with paid lunches would be "an evaluation of the merits of claims").

Plaintiff has shown that he and potential opt-in plaintiffs were commonly affected by Defendant's centralized policies and procedures for ASMs. Lance Schwimmer's testimony reveals Defendant's emphasis on uniformity between all Petco ASMs through the same formal job description, single training manual, and identical pay provisions. (Schwimmer Depo at 77, 94, 99-101, Exh. A; *see also* ASM Job Description, Exh. F.) Plaintiff has demonstrated that the factual and employment settings of Petco ASMs are similar with regard to their training, job duties, exempt status, and compensation. If Petco ASMs are entitled to overtime wages, it is because of Defendant's "overarching policy" to classify ASMs as exempt, despite the non-managerial duties they primarily perform. *See Micron*, 2005 WL 5336571, at *2. Therefore, Plaintiff has established the necessary common treatment of all Petco ASMs by Defendant to warrant notice to potential opt-ins and conditionally certify the collective action.

Plaintiff is not required to show that Defendant's policies for training, instructing, and compensating Petco ASMs are unlawful at the initial state of the certification analysis. To do so would require Plaintiff to prove that Petco ASMs nationwide performed primarily non-managerial duties before obtaining the discovery necessary to prove such a claim. This issue pertains directly to the merits of Plaintiff's claim, that

Petco ASMs are entitled to overtime compensation under § 216(b) of the FLSA. Requiring the Plaintiff to establish that Petco ASMs are misclassified as exempt employees at this stage in the certification process forces the Court to prematurely decide the merits of Plaintiff's claim based on a disputed and incomplete factual record. Consequently, whether or not Plaintiff is similarly situated to potential opt-ins in regard to having performed primarily non-exempt duties is a more appropriate inquiry for second stage of certification when more discovery is available.

Furthermore, Defendant ignores that Plaintiff has provided some evidence that Defendant's company-wide policy of classifying Petco ASMs as exempt employees is unlawful. Plaintiff Kellgren and Opt-in Plaintiffs Windham and Aex each testified to performing primarily non-managerial duties, despite their exempt status. (See Kellgren Depo.at 292-96, Exh. B; Windham Depo. at 277-79, Exh. C; Aex Depo. at 280, 309, Exh. D.) This testimony is from three different plaintiffs who worked at various Petco stores in three different states. Plaintiff Kellgren also testified to personally speaking with ASMs at other Petco stores who performed similar tasks as him. (Marc Hepworth Depo. at 70:9-12, 310:21-25.) These depositions, along with Petco's emphasis on uniformity between Petco ASMs nationwide, support Plaintiff's allegation that Petco ASMs nationwide are improperly classified as exempt employees under the FLSA.

Defendant mischaracterizes the standard for conditional certification when it argues that Plaintiff must show its exemption-related policies for ASMs are unlawful at this stage. Plaintiff's has established a common thread linking the allegations of potential plaintiffs as similarly situated under § 216(b) of the FLSA. Therefore, the Court cannot conclude based on the current record that allowing Petco ASMs' claims to proceed collectively will not serve judicial efficiency.

## C.   Defendant's Declarations

Attempting to negate Plaintiff's showing of similarity among potential class members, Defendant provided 27 declarations of current Petco employees affirming that ASMs are properly classified as exempt employees. (Def.'s Opp'n, Exh. 8-11.) In

response, Plaintiff correctly points out that courts need not consider evidence provided by the employer in the first stage of collective action certification.

At the first stage of the collective action certification process, evidence provided by the defendant employer is not germane when the plaintiff has met its evidentiary burden. *Sanchez v. Sephora USA, Inc.*, No. 11-03396 SBA, 2012 WL 2945753, at *4 (N.D. Cal. April 11, 2014); *Luque v. AT&T Corp.*, No. C 09-05885 CRB, 2010 WL 4807088, at *5 (N.D. Cal. Nov. 19, 2012); *Kress v. PricewaterhouseCoopers, LLP*, 262 F.R.D. 623, 628 (E.D. Cal. 2009); *Hector v. Vector Marketing Corp.*, 716 F.Supp. 2d 835, 838 (N.D. Cal. May 18, 2010) ("[C]ompeting declarations simply create a 'he-said-she-said situation'; while [i]t may be true that the [defendant's] evidence will later negate [the plaintiff's] claims, that should not bar conditional certification at the first stage.") (citation omitted). The goal of the first stage of the analysis is simply to determine whether notice should be disseminated in order to provide potential plaintiffs with the opportunity to opt-in. *Leuthold*, 224 F.R.D. at 467.

Plaintiff has met the lenient burden required for conditional certification by providing substantial evidence that Petco ASMs are similarly situated with respect to his allegations. Defendant's 27 declarations do not negate Plaintiff's showing that 755 Petco ASMs are subject to the same companywide policies and procedures. The declarations do not call into question the fact that Petco ASMs perform many of the same job duties in compliance with companywide procedures or that ASMs are classified as exempt employees. Those employees who are satisfied with Defendant's exemption policies for its ASMs may simply elect not to join in this lawsuit. Furthermore, as noted above, the Court is not determining whether Petco ASMs are properly classified as exempt in this stage of the analysis, as that argument pertains to the merits of the claim. Therefore, the Court will not give Defendant's happy camper declarations any weight.

### D. Proposed Notice to the Class

Plaintiff asks the Court to order Defendant to produce a list of all persons employed by Defendant as ASMs during the Collective Action Period and their names,

13cv644 L (KSC)

addresses, phone numbers, dates of employment, locations of employment, and work and personal email addresses. Defendant requests that the parties meet and confer regarding its concerns with the proposed notice and submit a joint proposed notice to the Court. Specifically, Defendant is concerned about the privacy rights of its employees and asks that potential opt-in plaintiffs be given the opportunity to elect not to have their contact information given to Plaintiff's counsel. Finally, Defendant also requests that a neutral third party distributes the notice in order to avoid giving the impression that the Court endorses Plaintiff's position. Plaintiff does not appear to object to Defendant's requests.

In a FLSA collective action, courts may facilitate the issuance of a notice informing potential plaintiffs of the lawsuit, so that they have the opportunity to "opt-in." *Hoffman-LaRoche*, 493 U.S. at 170. Because Plaintiff has made a sufficient factual showing that potential plaintiffs are similarly situated, conditional certification is appropriate, and a notice to the proposed class shall issue. Accordingly, the parties shall meet and confer over Defendant's concerns with the proposed notice and submit to the Court a joint proposed notice to the class members.

## IV.   **CONCLUSION & ORDER**

In light of the foregoing, Plaintiff met the standard required for conditional certification under 29 U.S.C. § 216(b). Therefore, the Court **GRANTS** Plaintiff's motion for conditional collective action certification. Accordingly, the Court **ORDERS** as follows:

(1) The Court conditionally certifies a collective action consisting of:

> All persons residing in the United States (except California) who are formerly or currently employed by Petco Animal Supplies, Inc. as an assistant manager at any time from March 19, 2010 to the present.

/ / /
/ / /
/ / /
/ / /
/ / /

(2) The parties shall meet and confer regarding Defendant's concerns with the proposed notice. The parties' shall file a joint proposed notice to the class and provide the name of the third party that will distribute the notice within 15 days of the entry of this Order.

**IT IS SO ORDERED.**

Dated:  September 3, 2015

_____
Hon. M. James Lorenz
United States District Judge

COPY TO:

HON. KAREN S. CRAWFORD
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL

13cv644 L (KSC)