1
2
3
4
5
6
7
8



9            UNITED STATES DISTRICT COURT
10           SOUTHERN DISTRICT OF CALIFORNIA
11

12   ERIK KELLGREN, individually and on          Case No.: 3:13cv644L(KSC)
     behalf of all others similarly situated,
13
                                Plaintiffs,      **ORDER GRANTING IN PART AND**
14                                               **DENYING IN PART JOINT**
     v.                                          **MOTION REGARDING**
15                                               **DEFENDANTS' COLLECTION OF**
     PETCO ANIMAL SUPPLIES, INC.;                **ELECTRONICALLY STORED**
16   PETCO HOLDINGS, INC.; and DOES 1            **INFORMATION, TO COMPEL THE**
17   to 100, inclusive,                          **PRODUCTION OF DOCUMENTS**
                                                 **AND INFORMATION, AND FOR AN**
18                              Defendants.       **IN-PERSON CONFERENCE**
19
20                                               **[Doc. No. 183]**
21

22          Before the Court is a Joint Motion Regarding Defendants' Collection of
23   Electronically Stored Information, to Compel the Production of Documents and
24   Information, and for an In-Person Conference. [Doc. No. 183.]  In the Joint Motion,
25   plaintiffs seek an order compelling defendants to provide further responses to
26   interrogatories and requests for production of documents.  Plaintiffs also seek an order
27   compelling defendants to produce all relevant documents in response to its requests for
28   production of documents.  Finally, plaintiffs request an in-person discovery conference

1 with the Court to discuss a number of discovery issues. For the reasons addressed more
2 thoroughly below, the Joint Motion is **GRANTED in part and DENIED in part**. [Doc.
3 No. 183.]

## I. <u>BACKGROUND</u>

5     This is a collective action in which plaintiffs Erik Kellgren ("Kellgren") and others
6 employed as Assistant Managers in defendants' stores claim to have been misclassified as
7 "exempt" from the overtime provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.
8 § 201, *et seq.* ("FLSA"). The central issues in the case relate to the duties plaintiffs
9 performed in the course of their employment, and whether they worked over forty hours a
10 week during the relevant time frame.

11     On September 3, 2015, the Court conditionally certified a collective action
12 consisting of: "All persons residing in the United States (except California) who are
13 formerly or currently employed by Petco Animal Supplies, Inc. as an assistant manager at
14 any time from March 19, 2010 to the present." [Doc. No. 78, at p. 11.] A Second Amended
15 Scheduling Order (hereinafter "Scheduling Order"), filed on November 18, 2016, gives the
16 parties until August 2, 2017 to complete fact discovery. [Doc. No. 184, at p. 1.] The
17 Scheduling Order also provides that any pretrial motions, including decertification and
18 final certification of the collective action, must be filed by September 15, 2017. *Id.* at p. 3.

19     The instant Joint Motion was filed by the parties on November 17, 2016, and
20 concerns: (1) plaintiffs' request for an in-person conference with the Court; (2) plaintiffs'
21 motion to compel regional and corporate e-mail; and (3) plaintiffs' motion to compel
22 further responses to certain interrogatories and requests for production in plaintiffs' third
23 set of interrogatories and requests for production (hereinafter "RFP 3").

## II.   <u>DISCUSSION</u>

25     Federal Rule of Civil Procedure 26(b), as amended, provides in relevant part as
26 follows:

27         Parties may obtain discovery regarding any nonprivileged matter that is
        relevant to any party's claim or defense and proportional to the needs of
28         the case, considering the importance of the issues at stake in the action,

3:13cv644L(KSC)

the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.

Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 26(b)(2)(B). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1).

## A. **Plaintiffs' Request for an In-Person Conference with the Court.**

Plaintiffs request an "in-person conference with the Court to discuss a number of discovery disputes that have reached such a mass that it would appear most effiacious [sic] and sensible to address them in person, including . . . (1) the scope of, and methodology for, Defendants' collection, search and production of electronically stored information ("ESI"), including e-mails; and (2) [p]laintiff's motion to compel [d]efendants to produce documents and information responsive to Plaintiffs' Third Set of Interrogatories and Request for Production of Documents. [Doc. No. 183, at p. 11.] Defendants do not oppose plaintiffs' request for an in-person discovery conference, but suggest that plaintiffs first provide a written list of the specific issues in advance of the conference. [Doc. No. 183, at p. 43.] Defendants assert that "[w]hile plaintiff listed numerous items that they seek to have the Court address at a conference, the topics are general. Plaintiffs do not identify the relief they seek, and Petco is not even aware there is a dispute as to several of the items." *Id.* Here, the Court finds that an in-person discovery conference is not necessary to resolve the instant discovery dispute as the parties have submitted sufficient briefing on the issues in dispute. The parties filed over eighty pages of briefing, excluding exhibits, regarding their respective positions. [Doc. No. 183.] Accordingly, plaintiffs' request for an in-person discovery conference at this time is **DENIED**.

3:13cv644L(KSC)

1  **B. Plaintiffs' Motion to Compel Regional and Corporate E-mail.**

2      Plaintiffs assert that "a core aspect of discovery in a retail chain misclassification case

3  is usually e-mails at the regional and corporate level, but Defendants refuse to produce

4  them here, much less even suggest when they might possibly be forthcoming." [Doc. No.

5  183, at p. 11.] In connection with their request for regional and corporate e-mail, plaintiffs

6  request broadly "the Court's guidance regarding the parameters of Defendants' collection

7  and production of ESI and other discovery to which they are entitled." *Id.* at p. 12.

8  Plaintiffs further note that "[n]o ESI protocol was in place in this action until August 26,

9  2016," and claim that "[d]efendants appear to relieve themselves of their obligation under

10  Fed. R. Civ. P. 26(e)(1) to supplement their responses to Plaintiffs' [previous discovery]

11  requests." [Doc. No. 183, at pp. 14, 15.]

12      Defendants oppose plaintiffs' request for regional and corporate e-mails on the

13  following grounds: (1) plaintiffs do not identify the specific requests at issue; and (2) the

14  only discovery requests which sought regional and corporate e-mail were plaintiffs' fifth

15  set of requests for production (hereinafter "RFP 5"), for which no meet and confer has

16  occurred. [Doc. No. 183, at pp. 44, 63.] Defendants further note that "to the extent

17  [p]laintiffs' request for 'regional and corporate e-mail' is a request for materials responsive

18  to their Requests for Production, Set 1 ('RFP 1'), Set 2 ('RFP 2'), or Set 4 ('RFP 4'), this

19  request is untimely, as this Court's deadlines for filing relevant motions to compel have

20  long passed." [Doc. No. 183, at p. 44.]

21      The Court notes that plaintiffs did not brief the Joint Motion in the manner required

22  by Chambers' Rules. In this regard, Chambers' Rules state as follows:

23      If the discovery dispute concerns written discovery requests
24      (e.g., interrogatories, requests for admissions, requests for
        production, subpoenas), the parties shall submit a "Joint Motion
25      for Determination of Discovery Dispute." For each written
        discovery request in dispute, the Joint Motion must include:
26

27      1.    The exact wording of the discovery request;
28      2.    The exact response to the request by the responding party;

4

3.     A statement by the propounding party and any points and authorities as to why a further response should be compelled; and,

4.     A precise statement by the responding party and any points and authorities as to the bases for all objections and/or claims of privilege.

Chambers' Rules, § V.D.

In the instant Motion, plaintiffs make general arguments about the collection, search and production of ESI at the regional and corporate level in the context of defendants' responses. For example, plaintiffs contend they have made repeated attempts to reach agreement with defendants regarding "discovery previously sought by Plaintiffs, including as to Defendants' affirmative defenses and other areas which implicate corporate-level decision-making, where corporate-level custodians must be identified and their ESI searched." [Doc. No. 183, at pp. 13, 31.] However, plaintiffs do not identify the discovery requests previously sought by plaintiffs on a request-by-request basis. Instead, plaintiffs broadly take issue with the "search terms" used by defendants and the use of a "delimiter." [Doc. No. 183, at p. 14.] Plaintiffs further assert that "Defendants have baulked at identifying relevant custodians, including at the corporate-level, and otherwise have stymied Plaintiffs' attempts to obtain corporate-level ESI. . . ." [Doc. No. 183, at p. 14.] However, plaintiffs fail to address on a request-by-request basis, either the relevant search terms, or the identity or job titles of the document custodians plaintiffs believe would be appropriate. By contrast, defendants made a reasonable attempt in the instant Motion to narrow the scope of the overly broad arguments made by plaintiffs about regional and corporate e-mail and ESI based on its view of the case. [Doc. No. 183, at pp. 63-66.] Defendants also attempted to provide substantive responses to each of plaintiffs' arguments about regional and corporate e-mail and ESI, and to explain why defendants believe its responses were appropriate under the circumstances. *Id.* Defendants assert that they "ha[ve] insisted that any discussion of electronic systems, potential custodians of documents, and possible search terms must be tethered to specific document requests

1 | Plaintiffs have propounded. . . . Petco has resisted discussing 'regional and corporate' e-
2 | mail in a vacuum and not in relation to a specific request." [Doc. No. 183, at p. 65.]

3 |  In sum, plaintiffs failed to abide by the Chambers' Rules requiring them to include,
4 | among other things, the exact wording of the discovery request at issue. [Chambers' Rules,
5 | § V.D.]   Plaintiffs' failure to comply with this protocol has unnecessarily resulted in
6 | difficulty deciphering the precise nature of plaintiffs' objections.  This Chambers' Rule is
7 | in place to allow for the expedient review of disputed discovery requests.  Going forward,
8 | any joint discovery motions filed that fail to meet the briefing requirements in Chambers'
9 | Rules will be subject to denial.

10 |  Federal Rule of Civil Procedure 7(b)(1) requires a party state with particularity the
11 | grounds for a court order and the relief sought.  Here, plaintiffs fail to clearly state what
12 | relief they seek and why they are entitled to a court order compelling that relief.
13 | Particularly when a party stands on an overly broad request and does not make a reasonable
14 | attempt to narrow it or to explain the need for such a broad range of documents and/or
15 | information, the Court will not "rewrite a party's discovery request to obtain the optimum
16 | result for that party.  That is counsel's job." *Bartolome v. City & Cty. of Honolulu*, No.
17 | Civil 0-176 SOM/LEK, 2008 WL 2736016, at *14 (D. Hawaii July 14, 2008).  The Court
18 | agrees with defendants that plaintiffs have not made a fair and appropriate attempt to
19 | identify with particularity the scope of the ESI as it relates to regional and corporate e-mail.

20 |  Further, plaintiffs' Motion to Compel as it relates to the collection, search and
21 | production of ESI at the regional and corporate level is premature.  As of the date the instant
22 | Motion was filed, the parties had not meaningfully met and conferred as to all of the
23 | disputed discovery requests on a request-by-request basis.  Defendants note that they
24 | served written responses to RFP 5 on October 27, 2016. [Doc. No. 183, at p. 64.]  The
25 | parties exchanged one letter and a request for a sample of documents, but the parties had
26 | no discussion of any perceived deficiencies as of the date that the Joint Motion was filed.
27 | *Id.*  The prematurity of plaintiffs' inclusion of the regional and corporate e-mail issue is
28 | further evidenced by the fact that on January 25, 2017, counsel for the parties jointly called

1   the Court seeking leave for plaintiff to file a Motion to Compel regarding defendants'

2   responses to plaintiffs' RFP 5. [Doc. No. 210.]  The parties represented to the Court that

3   as of that date, they had satisfied their meet and confer obligations. *Id.*  Based on this

4   representation, the Court granted plaintiffs leave to file and serve a Motion to Compel

5   regarding RFP 5 and issued a briefing schedule accordingly. *Id.*

6         To the extent that plaintiffs claim that their "prior requests . . . specifically sought . . .

7   corporate decision-making ESI," including regional and corporate e-mail, and that they are

8   entitled to these documents in response to their earlier discovery requests (RFP 1, 2 and 4),

9   the Court finds this argument has no merit and is untimely. [Doc. No. 183, at pp. 14-15.]

10        Accordingly, plaintiffs' Motion to Compel defendants to collect, search and produce

11  ESI at the regional and corporate-level regarding RFP 5 is **DENIED** as untimely and for

12  failure to properly meet and confer.

13  C. **Plaintiffs' Motion to Compel Further Responses to Certain Interrogatories and
      Requests for Production in Plaintiffs' Third Set of Interrogatories and**
14    **Requests for Production [hereinafter "RFP 3"].**

15        **1. Search Terms.**

16

17        With respect to the search terms to be used by defendants to collect and produce

18  responsive documents, the parties appear to have engaged in significant meet and confer

19  efforts and have fundamental differences regarding the ESI search terms to be used. [Doc.

20  No. 183-1, at ¶¶ 7, 15, 19, 24, 25, 27; *see also* Doc. No. 183, at pp. 55-57.]  According to

21  defendant, on November 8, 2016, plaintiffs sent their final search term proposal. [Doc. No.

22  183, at p. 57.]  Defendants contend it is "elaborate and complex" and none of the searches

23  are limited to e-mail with the Discovery Opt-Ins' names. *Id.*  Defendants contend that

24  plaintiffs' proposed selection of search terms would result in more than 400,000 documents

25  to review for possible production if limited to the 30 Discovery Opt-In Deponents, and

26  more than 1.5 million if the search terms include the 118 Discovery Opt-Ins.  Petco has not

27  agreed to plaintiffs' proposal and on November 15, 2016, defendants contend they made

28

1   an alternative proposal.  Plaintiffs had not yet responded as of the filing of this Joint

2   Motion, on November 17, 2016. *Id.*

3       Under defendants' proposal, Petco will search for the terms it has identified and

4   almost all of the 90+ terms proposed by plaintiffs, subject to certain limits designed to

5   generate a manageable volume of responses likely to be responsive, within e-mail files of

6   the 30 Discovery Opt-In Deponents. [Doc. No. 183, at p. 57 (citing Ex. M to Maneker Decl.

7   at 124-25).]  Plaintiffs take issue with defendants' use of certain limits on its proposed

8   search terms, including, for example, the first or last name of the Discovery Opt-In. [Doc.

9   No. 183, at p. 14.]  Plaintiffs' proposal is unreasonable and overbroad.  Based on the

10  Court's review of the discovery requests at issue, and in light of the proportionality

11  standard set forth in Rule 26(b), it appears that defendants' proposal to search for

12  responsive documents using the search terms as set forth in Exhibit M in Maneker's

13  Declaration is sufficient.  Consequently, plaintiffs' request for a court order related to the

14  expanded search terms is **DENIED.**

15        **2.  <u>Plaintiffs' Interrogatory No. 3 of RFP 3.</u>**

16      On November 29, 2016, the Court held an informal discovery telephonic conference

17  regarding, among other things, the instant Joint Motion. [Doc. No. 189.]  Counsel for

18  plaintiffs, Mr. Seth Lesser, advised the Court that plaintiffs seek to withdraw the dispute

19  regarding defendants' response to Plaintiffs' Interrogatory No. 3. *Id.*  Accordingly, any

20  issues in the Joint Motion regarding Interrogatory No. 3 are denied as **MOOT.**

21        **3.  <u>Plaintiffs' Interrogatory No. 5 of RFP 3.</u>**

22

23      Interrogatory No. 5 asks Petco to identify "all communications that the General

24  Managers and District Managers of the Subject Plaintiffs have had concerning this lawsuit"

25  and for each communication to identify "whom the communication was with, as well as

26  the date, form and substance of the communication." [Doc. No. 183, at p. 19.]  Plaintiffs

27  define "Subject Plaintiffs" as the 118 Discovery Opt-Ins and Plaintiff Kellgren. *Id.* at p.

28  16.  Plaintiffs contend that Interrogatory No. 5 "seek[s] clearly relevant information and

1   [is] not overly broad, unduly burdensome or disproportionate to the needs of this case" and
2   "is the same type of information that Defendants have sought (and obtained) from each and
3   every Discovery Opt-In to whom they have directed written discovery." *Id.* at p. 35.
4   Defendants objected to this Interrogatory on various grounds, including that "the
5   interrogatory is overly broad and unduly burdensome." *Id.* at p. 69. Defendants noted that
6   there are 240 current and former General Managers (hereinafter "GMs") and District
7   Managers (hereinafter "DMs") and argue that they "cannot readily determine 'all
8   communications' that may have taken place by or between any of several hundred
9   employees." *Id.*

10   Defendants assert that the "cost and time associated with tracking down and
11   interviewing each of these individuals outweighs any benefit that would be derived." *Id*.
12   To the extent that plaintiffs seek to compel defendants to interview or speak with each of
13   the current and former GMs and DMs about this discovery request (or similar requests at
14   issue herein), the Court finds it unnecessary in light of the limited e-mail files that
15   defendants have already agreed to produce.

16   Defendants state that they have "agreed to search for and produce, e-mail that
17   appears designed to obtain this information for a sample of the [30] Discovery Opt-Ins
18   [Deponents]." *Id.* at p. 70 (citing to Exhibit M to Maneker Decl. at 124-25, 125-37).
19   Defendants explain in the Declaration of Meryl Maneker that they have agreed to search
20   for e-mail to obtain responsive information related to 30 subject plaintiffs who will be
21   selected for deposition (hereinafter "Discovery Opt-In Deponents") because they estimate
22   the volume of e-mail to be collected from the stores and DMs, related to 118 Discovery
23   Opt-Ins would comprise four to five terabytes of data. [Doc. No. 183-18, at p. 5, ¶ 18.]
24   "The estimate to process, load and host that volume of data Petco received ranged from
25   $277,000 to almost $1 million (depending on the amount of e-mail that contained a search
26   term)." *Id*. Petco further estimated attorneys' fees related to the review of search results of
27   this volume of data would be hundreds of thousands of dollars. *Id*. The Court finds that
28   the significant cost associated with searching for and producing information related to all

of the 118 Discovery Opt-Ins is not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(2)(B).   Without more, plaintiffs have not shown that a sampling of responsive information for the 30 Discovery Opt-In Deponents is insufficient for them to pursue their theory of the case.

Accordingly, at this time, the Court **DENIES** plaintiffs' request to compel defendants to interview or speak with each of the current and former GMs and DMs about this discovery request.   Defendants are to produce the e-mail files for the 30 Discovery Opt-In Deponents during the time they worked as Assistant Managers during the relevant time period using the search methodology and search terms set forth in Exhibit M of the Maneker Declaration.   To the extent that defendants have produced documents sought as represented, their response to Interrogatory No. 5 is sufficient.

### 4. Plaintiffs' Interrogatory No. 6 of RFP 3.

Interrogatory No. 6 asks Petco to "identify and describe any communication(s) Defendants' General Managers and District Manager[s] [sic] have had relating to or concerning any complaints made by any Subject Plaintiffs or AM regarding hours worked, the manner in which they were paid, staffing levels, and/or labor budgets at the stores where they worked." [Doc. No. 183, at p. 19.]  Plaintiffs contend that Interrogatory No. 6 "seek[s] clearly relevant information and [is] not overly broad, unduly burdensome or disproportionate to the needs of this case" and again assert that it "is the same type of information that Defendants have sought (and obtained) from each and every Discovery Opt-In to whom they have directed written discovery." *Id.* at p. 35.

Defendants contend that they have "appropriately responded to Interrogatory No. 6." [Doc. No. 183, at p. 70.]   Notwithstanding defendants' objections to this Interrogatory, defendants directed plaintiffs to their response to RFP 3, Request for Production No. 2, "wherein Petco agreed to search for and produce, responsive, non-privileged e-mails, from select store and District manager e-mail files, including those containing the root term 'complain*' and an Opt-In's name." [Doc. No. 183, at p. 70 (citing Ex. A to Conway Decl.,

10

1  at pp. 7-10, 31-32).] Defendants also contend that they "agreed to search for e-mail files

2  with the term 'labor' in close proximity to the terms 'budget' or 'hours' and for e-mail files

3  with the word 'hours' and either 'AM,' 'Assistant Manager,' or the Opt-In's name." [Doc.

4  No. 183, at p. 70 (citing Ex. A to Conway Decl., at pp. 7-10, 31-32).] Defendants contend

5  that "this interrogatory seeks information similar to that sought in RFP 2, Request [for

6  Production] No. 14, which sought documents 'concerning complaints by AMs, whether

7  formal or informal' regarding 'failure to pay AMs for all hours worked, including overtime

8  hours, and the number of hours an AM was working." [Doc. No. 183, at pp. 70-71 (internal

9  citation omitted).] Defendants note that they have "searched various sources for such

10  complaints and produced the same." *Id.*

11        Notably, plaintiffs' fail to acknowledge in the Joint Motion that defendants agreed

12  to search for and produce certain responsive documents to this Interrogatory in connection

13  with similar requests made by plaintiffs in RFP 3, Request for Production No. 2 and RFP

14  2, Request for Production No. 14. In fact, plaintiffs' argument regarding Interrogatory

15  Nos. 5, 6, 7 and 8 is summarized in just a few paragraphs containing general arguments.

16  [Doc. No. 183, at pp. 33-35.] Instead, plaintiffs claim that "these requests seek clearly

17  relevant information and are not overly broad, unduly burdensome or disproportionate to

18  the needs of the case." [Doc. No. 183, at p. 35.]

19        For the reasons outlined in the previous discussion, the Court **DENIES** plaintiffs'

20  request to compel defendants to interview or speak with each of the current and former

21  GMs and DMs about this discovery request. This demand is also inconsistent with the

22  permissible scope of interrogatories under the Federal Rules. Defendants have already

23  agreed to produce certain documents sought as represented herein, which the Court finds

24  sufficient.

25        **5.  Plaintiffs' Interrogatory No. 7 of RFP 3.**

26  Interrogatory No. 7 asks Petco to "describe any communications Defendants'

27  General Managers and District Managers had with any store employee where the Subject

28  Plaintiffs worked wherein they recommended, mandated and/or directed the reduction of

11

1  the number of employees and/or labor hours for a particular day or given time period."

2  [Doc. No. 183, at p. 20.]   Plaintiffs contend that Interrogatory No. 7 "seek[s] clearly

3  relevant information and [is] not overly broad, unduly burdensome or disproportionate to

4  the needs of this case" and "is the same type of information that Defendants have sought

5  (and obtained) from each and every Discovery Opt-In to whom they have directed written

6  discovery." *Id.* at p. 35.  Petco objected to this request on various grounds, including that

7  it is overly broad and unduly burdensome explaining that "Petco cannot readily determine

8  'any communication' that may have taken place by or between hundreds of employees."

9  [Doc. No. 183, at p. 71.]

10  Defendants argue that there are 240 current and former GMs and DMs and contend

11  that "this request is not proportional to the needs of the case, considering the time and

12  resources to complete this task balanced against the materiality of the information and the

13  ability to obtain the information through a less intrusive means." [Doc. No. 183, at p. 71.]

14  Notwithstanding their objections, defendants note that they have "agreed to collect, search

15  and review e-mail from select store and DM e-mail files using Plaintiffs' search terms –

16  such as 'labor[,]' 'budget[,]' or 'hours' that appear designed to obtain the information

17  sought." *Id.* (emphasis added) (citing Ex. M to Maneker Decl. at 124-25, 135-37.)

18  Additionally, defendants assert that "plaintiffs may depose up to nine GMs or DMs if they

19  seek yet further information." *Id.*  As set forth in Exhibit M of the Maneker Declaration,

20  defendants have agreed to "search the Store and DM e-mail for the 30 Opt-In Plaintiffs

21  selected as deponents" using Petco's search terms and plaintiffs' search terms, with certain

22  limitations. [Ex. M to Maneker Decl. at 124-125, 135-37.]  The Court finds defendants'

23  response to Interrogatory No. 7 sufficient in light of the proportionality standards set forth

24  in Rule 26.

25  Accordingly, at this time, the Court **DENIES** plaintiffs' request to compel

26  defendants to interview or speak with each of the current and former GMs and DMs about

27  this discovery request.  Defendants are to produce the responsive, non-privileged store and

28  DM e-mail files for the 30 Discovery Opt-In Deponents using the search methodology and

3:13cv644L(KSC)

search terms set forth in Exhibit M of the Maneker Declaration.   To the extent that defendants have produced documents sought as represented, their response to Interrogatory No. 7 is sufficient.

### 6. Plaintiffs' Interrogatory No. 8 of RFP 3.

Interrogatory No. 8 asks Petco to: "identify all communication(s) that Defendants' General Managers and District Managers have had concerning the classification and/or reclassification of the Subject Plaintiffs or AMs as exempt or non-exempt from overtime, including the dissolution or discontinuance of the AM position." [Doc. No. 183, at p. 20.] Interrogatory No. 8 further requests "[f]or each communication, identify whom the communication was with and the date, form and substance of the communication." *Id.* Interrogatory No. 8 "has no date limitation."  Plaintiffs contend that Interrogatory No. 8 "seek[s] clearly relevant information and [is] not overly broad, unduly burdensome or disproportionate to the needs of this case" and "is the same type of information that Defendants have sought (and obtained) from each and every Discovery Opt-In to whom they have directed written discovery." *Id.* at p. 35.

Defendants assert that they have "appropriately responded to Interrogatory No. 8." [Doc. No. 183, at p. 72.]  Defendants objected to this Interrogatory and explained that "[Petco] cannot readily determine 'any communication' that may have taken place by or between hundreds of employees.'" *Id.*   Notwithstanding their objections to this Interrogatory, defendants directed plaintiffs to the "documents produced in response to RFP 4, specifically identifying the set of talking points distributed to GMs and DMs regarding the elimination of the AM position." *Id.*  Defendants contend that they asked plaintiffs to clarify how this response was deficient during the meet and confer process, but plaintiffs failed to do so. *Id.*  Defendants also agreed to search select store and DM e-mail files apparently intended to locate the information sought by plaintiffs, in addition to the documents identified above. *Id.*

For the reasons outlined in the previous discussion, the Court **DENIES** plaintiffs'

3:13cv644L(KSC)

1   request to compel defendants to interview or speak with each of the current and former

2   GMs and DMs about this discovery request.  Defendants have already agreed to produce

3   certain documents sought as represented herein, which Court finds sufficient.

### 7. **Plaintiffs' Requests for Production Nos. 1-6 and 8-10 of RFP 3.**

6       In the Joint Motion, plaintiffs combine their arguments regarding why the Court

7   should compel further responses to Requests for Production Nos. 1-6 and 8-10. [Doc. No.

8   183, at pp. 36-38.]  Plaintiffs assert generally that the Requests for Production in RFP 3

9   "seek relevant communications sent and received by the GMs and DMs who supervised

10   the Subject Plaintiffs." [Doc. No. 183, at pp. 35-36.]  The Court will consider plaintiffs'

11   arguments (and defendants' responses) regarding these Requests for Production together

12   as they all relate to communications sent or received by the GMs and DMs who supervised

13   the Discovery Opt-Ins.   However, certain requests, including text messages sent or

14   received, will be discussed separately.

15       Plaintiffs' Requests for Production Nos. 1-6 and 8-10 seek the following:

16   • All documents, e-mails, text and internet messages, tweets, posts on social
     media and other communications sent or received by Defendants' General
17     Managers and/or District Managers relating to *the Subject Plaintiffs*. (No. 1).

19   • All documents, e-mails, text and internet messages, tweets, posts on social
     media and other communications sent or received by Defendants' General
20     Managers and/or District Managers relating to *complaints about the staffing
     levels or labor budgets at the stores where the Subject Plaintiffs worked.* (No.
21     2).

23   • All documents, e-mails, text and internet messages, tweets, posts on social
     media and other communications sent or received by Defendants' General
24     Managers and/or District Managers *instructing or relating to instructions they
     gave to send hourly-paid employees home during their shifts at the stores
25     where the Subject Plaintiffs worked.* (No. 3).

27   • All documents, e-mails, text and instant messages, tweets, posts on social
     media and other communications sent or received by Defendants' General
28     Managers and/or District Managers *relating to, concerning or in connection*

*with this lawsuit (excluding communications with Defendants' counsel) as they pertain to the Subject Plaintiffs.* (No. 4).

- All documents, e-mails, text and instant messages, tweets, posts on social media and other communications sent and/or received by Defendants' General Managers and/or District Managers *that evidence or record the times that the Subject Plaintiffs arrived at work, took a meal and rest break, departed from work and/or worked in excess of 40 hours in a workweek.* (No. 5).

- All documents sent or received by Defendants' General Managers and/or District Managers *reflecting, concerning, or showing when the Subject Plaintiffs were directed to perform and/or complete manual tasks including, but not limited to, pricing merchandise, unloading freight, merchandise recovery, cleaning the store, stocking the shelves, operating the cash register, and setting up displays, ad planners and/or planograms.* (No. 6).

- All documents sent or received by Defendants' General Managers and/or District Managers *reflecting, concerning, or showing when the Subject Plaintiffs made (either formal or informal and whether in writing or verbal) complaints about insufficient staffing levels, the labor budget and/or wage and hour issues including, but not limited to, complaints concerning Defendants' failure to pay the Subject Plaintiffs for all hours worked, including overtime hours, and the number of hours the Subject Plaintiffs worked.* (No. 8).

- All documents, e-mails, text and instant messages, tweets, posts on social media and other communications sent or received by Subject Plaintiffs' General Managers and District Managers *concerning the classification and/or reclassification of the AM position as exempt or non-exempt from overtime and/or the dissolution or discontinuance of the AM position. (This Request has no date limitation).* (No. 9).

- All documents, e-mails, text and instant messages, tweets, posts on social media and other communications sent or received by Defendants' General Managers and District Managers *reflecting, concerning, or showing when the Subject Plaintiffs were required to work on scheduled days off, were on call, or otherwise responded to communications from Defendants when not scheduled to work or when not in the store.* (No. 10).

[Doc. No. 183, at pp. 21-28 (emphasis added).]

15

1     Defendants objected to these document requests on various grounds, including that

2  the requests are unduly burdensome and not proportional to the needs of this case.[1] [Doc.

3  No. 183, at p. 22.] Notwithstanding their objections, defendants agreed to search for and

4  produce store and DM e-mails for a sample of 30 Discovery Opt-Ins. [Doc. No. 183, at pp.

5  21-25, 74.]   For example, in response to plaintiffs' Request for Production No. 1,

6  defendants agreed to search for and produce the following documents for each Subject

7  Plaintiff:

8        • Any application for employment with Petco stored at the HR Service Center
9           or at the store where he/she worked as an Assistant Manager;

10       • Any performance Evaluations stored at the HR Service Center or at the store
11          where he/she worked as an [sic] Assistant Managers;

12       • Any Employee Performance Notices stored at the HR Service Center or at the
13          store where he/she worked as an Assistant Manager;

14       • Any Online Personnel Action records reflecting separation from employment
15          from Petco, if applicable; and

16       • Any complaints by or regarding the Subject Plaintiff made to the Petco
17          Hotline.

18  [Doc. No. 183, at pp. 22, 24.]  Defendants also agreed to search for and produce, on a

19  rolling basis, responsive, non-privileged e-mails with respect to the 30 Opt-In Deponents

20  pursuant to the procedure set forth in their responses. [Doc. No. 183, at pp. 24-25.]

21       Plaintiffs contend that defendants' responses to each of plaintiffs' Requests for

22  Production Nos. 1-6 and 8-10 are deficient because "it appears that Defendants did not

23  speak with any of its General Managers and District Managers about plaintiffs' requests,

24

25  ───────────────
[1] Plaintiffs included defendants' response to Request for Production No. 1 in the body of the Joint
26  Motion. [Doc. No. 183, at pp. 21-25.]  However, plaintiffs note as follows in the Joint Motion: "because
    Defendants' objections and responses to each of Plaintiffs' Request for Production Nos. 2-10 span
27  several pages (and are substantially similar), so as to not burden the Court with excessive briefing [they]
    incorporate[d] by reference the applicable pages from Defendants' responses, as annexed to the
28  Affidavit of Jason Conway." *Id.* at p. 21.

1    and Defendants did not include any specific GM or DM communications or documents in
2    their responses." [Doc. No. 183, at pp. 36, 37.]   Plaintiffs assert that "the requests are
3    directly proportional to the needs of the case and relate specifically to the 118 Discovery
4    Opt-Ins (including Plaintiff Kellgren) whom Defendants have similarly obtained discovery
5    from (or are in the process of doing so)." *Id.* at p. 37.   Plaintiffs cite *National Association*
6    *of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556 (N.D. Cal. 1987), and assert that
7    "a reasonable inquiry requires, 'at a minimum, a reasonable procedure to distribute
8    discovery requests to all employees and agents of the [party] potentially possessing
9    responsive information, and to account for the collection and subsequent production of the
10   information to [the opposing party]'" [Doc. No. 183, at p. 37.] Finally, plaintiffs take issue
11   with defendants' indication that "they will 'consider' searching, in some instances, their e-
12   mail boxes for responsive documents" as opposed to actually performing any substantive
13   inquiries with their GMs and DMs. [Doc. No. 183, at p. 38.]

14        Defendants counter by noting that, on their face, these requests are directed to Petco,
15   not to individual GMs or DMs. [Doc. No. 183, at p. 73]. Defendants further note that they
16   are not required to speak to each GM or DM to respond to these requests because it would
17   be overly burdensome and not proportional to the needs of this case. *Id.* To the extent that
18   plaintiffs seek information from specific GMs and/or DMs, they will have the opportunity
19   to depose up to nine supervisors. *Id.*

20        Further, defendants contend that they are not required to speak with the GMs and/or
21   DMs because the reasonably responsive documents sought could be identified and gathered
22   without their involvement. *Id.* at p. 73. Defendants explain in the Joint Motion that at
23   Petco, each store (as opposed to any individual GM) has a Petco-issued e-mail account
24   accessible by the GM and DM. *Id.* Further, Petco manages and/or maintains personnel
25   records for and complaints related to its employees, including the Discovery Opt-Ins,
26   centrally. *Id.* Petco contends it "conducted a reasonable inquiry into the factual basis of
27   each response to RFP 3 as contemplated by *Natl Ass'n of Radiation Survivors v. Turnage*,
28   115 F.R.D. 543, 556 (N.D. Cal. 1987)." [Doc. No. 183, at p. 74.]  Specifically, Petco

1   contends it "has produced, or is in the process of producing personnel records as well as
2   any complaint(s) by or regarding them made to the Petco Hotline and Petco has agreed to
3   search for and produce responsive, non-privileged e-mail from stores and DMs related to
4   the 30 Opt-Ins selected for deposition during the time when they were an AM." [Doc. No.
5   183, at p. 74.]

6          Finally, with respect to Requests for Production Nos. 4-6 and 9-10, defendants
7   counter by noting that "plaintiffs grossly mischaracterize Petco's willingness to 'consider'
8   searching for additional documents as indicia of its failure to perform a substantive inquiry
9   with its GMs and DMs." *Id.* at p. 75.  Specifically, Petco has agreed to search the store and
10  DM e-mail files for the 30 Opt-In Deponents using both Petco's search terms and plaintiffs'
11  search terms, with "appropriate limitations.[2]" [Doc. No. 183, at p. 75.]

12         The Court agrees with defendants that they are not required to speak with the GMs
13  and/or DMs because the reasonably responsive documents sought can be identified and
14  gathered without their involvement.  In light of the significant cost for defendants to collect,
15  search and produce the volume of e-mail for all 118 Discovery Opt-Ins and their respective
16  DMs, the Court also agrees that defendants' search, review, and production of non-
17  privileged, responsive e-mail from the mailboxes of the stores and DMs of the 30
18  Discovery Opt-In Deponents using both Petco's search terms and plaintiffs' search terms
19  is sufficient.

20         The Court **DENIES** plaintiffs' motion to compel further responses to Requests for
21  Production Nos. 1-6 and 8-10.  For the reasons outlined in the previous discussion, the
22  Court **DENIES** plaintiffs' request to compel defendants to interview or speak with each of
23  the current and former GMs and DMs about these discovery requests.  Defendants have
24  already agreed to produce certain documents sought as represented herein, which the Court

25

26  _____

27  [2] Petco contends that it has proposed limitations for 74 of plaintiffs' proposed search terms, and has
    agreed to no limitation on 12 of plaintiffs' terms, all of which seek to limit results to the documents most
28  likely to have relevant information. [Doc. No. 183, at p. 75.]

1  finds sufficient.

2  **a. <u>Plaintiffs' Requests for Text Messages Sent or Received by GMs</u>**
3  **<u>and DMs.</u>**

4       Plaintiffs' Requests for Production Nos. 1-3 include requests for defendants to
5  produce text messages sent or received by GMs and DMs regarding the Discovery Opt-Ins
6  (Request for Production No. 1); complaints about staffing levels or labor budgets (Request
7  for Production No. 2); and text messages sent or received by GMs or DMs with instructions
8  to send hourly-paid employees home during shifts at the stores where Subject Plaintiffs
9  worked (Request for Production No. 3). [Doc. No. 183, at pp. 21-25.]

10       Defendants object to plaintiffs' requests for text messages sent or received by GMs
11  and DMs on various grounds, including that they are unduly burdensome and not
12  proportional to the needs of this case. *Id.* Defendants argue that the GMs do not have
13  company-issued phones and that the GMs' personal phones are "outside Petco's custody,
14  control or possession and would invade these individuals' privacy rights." [Doc. No. 183,
15  at p. 76.] Defendants note "Petco's Store Communications Policy," which advises that
16  DMs are permitted to communicate with stores through e-mail or voice-mail, to support
17  their argument that the text messages sought by plaintiffs are not likely to contain
18  significant information relevant to whether the Discovery Opt-Ins were properly classified
19  as exempt. [Doc. No. 183, at pp. 76-77.] Finally, defendants reiterate that "[s]ince Petco
20  has agreed to search for and produce a substantial sample of responsive e-mails to and from
21  DMs, the burden to search text messages simply is not justified." *Id.* at p. 77.

22       Plaintiffs' argument in support of their need for text messages sent or received by
23  GMs and DMs is vague, at best. Plaintiffs claim that defendants have "acknowledged that
24  DMs, for example, were issued with company phones and, therefore, may have texted with
25  store-level employees, including the Discovery Opt-Ins, about their job duties." [Doc. No.
26  183, at p. 38.] Notably, plaintiffs do not cite anything in support of this
27  "acknowledgement." *Id.* In response to defendants' arguments that the GMs' personal
28  phones are outside of Petco's possession, custody or control, plaintiffs contend that "this

1    claim is spurious at best" and that "the company has direct control over what information
2    GMs and DMs' [sic] can post and send using these mediums, and indicates that individuals
3    can be terminated for not complying with their corporately-mandated rules." *Id.* (citing
4    generally to Defendants' Social Media and Networking Policy and Corporate Voice and
5    Data Communications Policy). Plaintiffs cite to Defendants' Social Media and Networking
6    Policy and Corporate Voice and Data Communications Policy in support of its argument
7    that "GMs and DMs have no expectation of privacy," without any analysis or citation of
8    authority. [Doc. No. 183, at p. 39.] Defendants counter plaintiffs' characterization of
9    Petco's Social Media and Networking Policy noting that it simply "sets forth guidelines
10   [for] individuals identifying themselves as Petco employees that they should follow when
11   using social media in their personal capacity." [*Id.* at p. 78.]

12         The Court finds that plaintiffs fail to clearly state why they are entitled to a court
13   order compelling production of text messages sent or received by GMs and DMs on their
14   personal cell phones in connection with plaintiffs' Requests for Production Nos. 1-3. The
15   Court agrees with the arguments made by defendants in opposition to plaintiffs' requests
16   to produce text messages sent or received by GMs and DMs regarding the Discovery Opt-
17   Ins. Accordingly, the Court **DENIES** plaintiffs' motion to compel production of text
18   messages sent or received by GMs and DMs in connection with plaintiffs' Requests for
19   Production Nos. 1-3.

20              **b.  <u>Plaintiffs' Requests for "Internet Messages" Made or Received by
21              GMs or DMs.</u>**

22         Plaintiffs' Requests for Production Nos. 1-3 include requests for "internet messages,
23   tweets and posts on social media" made or received by the Discovery Opt-Ins' GMs or
24   DMs. [Doc. No. 183, at pp. 21-25.] Similarly, Requests for Production Nos. 4-5 and 9-10
25   include requests for "tweets and posts on social media" made or received by the Discovery
26   Opt-Ins' GMs or DMs. *Id.* at p. 26.

27

28

3:13cv644L(KSC)

1   Defendants object to plaintiffs' requests for this material on various grounds and
2   further contend that this information is not within Petco's possession, custody or control.
3   [Doc. No. 183, at p. 78.] Defendant explains in the Joint Motion that "while Petco
4   maintains social media accounts, such as a Facebook page, GMs and DMs *do not have*
5   *access to or the ability to post on these accounts on behalf of Petco*." [*Id.* (emphasis
6   included in original).] Defendants further explain that any personal social media accounts
7   of the GMs and DMs are personal and not available to Petco, invoking these individuals'
8   privacy rights. *Id.*

9   Plaintiffs make the same argument in support of internet messages, including tweets
10   and posts on social media, made or received by GMs and DMs, as made in support of text
11   messages, summarized above. [Doc. No. 183, at p. 38:23-26; p. 39:1-17,]

12   For the same reasons explained above, the Court agrees with the arguments made by
13   defendants in opposition to plaintiffs' requests to produce internet messages, tweets and
14   posts on social media made or received by the Discovery Opt-Ins' GMs or DMs.
15   Accordingly, the Court **DENIES** plaintiffs' motion to compel production of internet
16   messages, tweets and posts on social media in connection with plaintiffs' Requests for
17   Production Nos. 1-5 and 9-10.

18
19   ## 8. Plaintiffs' Request for Production No. 7, including Planograms, Ad Planners, Floor Resets and Floor Plans.

20   Request for Production No. 7 seeks "[a]ll documents sent or received by Defendants'
21   General Managers and/or District Managers that reflect the tasks, assignments, duties,
22   and/or functions performed by the Subject Plaintiffs including, but not limited to, all
23   policies and procedures related to the Subject Plaintiffs' job duties, all instructions on the
24   performance of manual tasks performed by the Subject Plaintiffs, and all planograms, ad
25   planners, floor resets, floor plans and all other documents providing instruction concerning
26   the layout of the stores where the Subject Plaintiffs worked." [Doc. No. 183, at pp. 39-40.]
27   Defendants object to the production of planograms, ad planners, floor resets or floor
28   plans, on various grounds, including because they are "not relevant to a party's claim or

1   defense, because [they] ha[ve] no bearing on whether Petco's Assistant Managers were

2   properly classified as exempt." [Doc. No. 183-2, at p. 22.]

3        Plaintiffs contend that planograms, ad planners, floor resets, and floor plans

4   (hereinafter "planogram documents") are received by defendants' GMs and DMs through

5   defendants' intranet portal. [Doc. No. 183, at p. 40.] Plaintiffs further contend that the

6   manner in which "Petco micromanages their stores, including with respect to store layout,

7   is central to whether AMs are properly classified as exempt under the FLSA, an analysis

8   which turns on: (1) the nature of Plaintiffs' primary duties; and (2) the degree of discretion

9   (or, in this case, lack of discretion) that Plaintiffs had both in the performance of their duties

10  generally and by completing pre-determined planograms and other corporately-derived

11  plans." *Id.* Plaintiffs contend that the refusal to produce these documents prejudices

12  plaintiffs' ability to prosecute this action. [Doc. No. 183, at p. 41.] Plaintiffs claim that

13  these documents are "regularly produced during the course of FLSA retail misclassification

14  cases." *Id.* at pp. 40-42.  Plaintiffs cite case law in support of its argument that courts have

15  relied on these types of documents as evidence of corporate control over managers in FLSA

16  cases and as evidence of assistant managers' lack of discretion. [Doc. No. 183, at pp. 40-

17  41; *see, e.g., Indergit v. Rite Aid Corp.*, No. 08 Civ. 9361(PGG), 2010 WL 2465488, at *5

18  (S.D.N.Y. June 16, 2010).]

19       Defendants counter plaintiffs' arguments for the planogram documents on multiple

20  grounds, generally asserting that they are not responsive to Request for Production No. 7

21  and are not relevant. [Doc. No. 183, at p. 78.] More specifically, defendants contend that

22  the fact that Petco provides its stores with uniform instructions, such as planograms, does

23  not, in and of itself, establish that AMs lack discretion. *Id.* at pp. 78-79; *see, e.g., Mitchell*

24  *v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725, 743 (S.D. Ohio 2006).] Defendants

25  attempt to distinguish the authority cited by plaintiffs in support of their argument, and

26  contend that none of the cases cited by plaintiffs "specifically found that planograms and

27  the like are evidence of non-exempt status, and none of them specifically considered their

28  impact on a retail manager's level of discretion." *Id.* at p. 80.  "Rather this evidence was

22

1   cited to either show plaintiffs performed similar duties for conditional class certification
2   purposes or focused on numerous non-exempt tasks including but not limited to setting up
3   planograms as evidence in a particular case that plaintiffs were non-exempt." *Id.*

4          Second, defendants contend that the planogram documents are not responsive to
5   Request for Production No. 7 because it seeks documents "sent or received by GMs and/or
6   DMs" related to tasks performed by the Discovery Opt-Ins, including documents
7   "providing instruction concerning the layout of the stores where the" Discovery Opt-Ins
8   worked. [Doc. No. 183, at p. 80.]  GMs and DMs do not individually receive these four
9   types of documents, but rather these documents are made available to all of the
10  management team of a particular store. *Id.* at pp. 80-81.  Third, defendants contend that the
11  planogram documents "are factually of little value as they would shed no light on the
12  Discovery Opt-Ins' duties or hours or whether AMs were properly classified as exempt"
13  because merchandising was not one of the AMs' duties. [Doc. No. 183, at p. 81.]  Further,
14  defendants contend that producing such documents would be extremely burdensome in that
15  Request for Production No. 7 seeks these related to more than 100 stores. *Id.*  Defendants
16  note that they have agreed to provide plaintiffs "a three-month sample of Action Memos,
17  which will include ad planners and floor resets, as well as other documents sent to a single
18  store," and that plaintiff should be required to review this sample before obtaining more.
19  *Id.* at pp. 81-82.

20         Despite defendants' arguments to the contrary, plaintiffs have argued convincingly
21  that the planogram documents are relevant as evidence of corporate control and considered
22  by courts for certification motions of nationwide FLSA actions.  Plaintiffs are entitled to
23  pursue their theory of the case.  To test this theory, plaintiffs are at least entitled to a broader
24  sampling of defendants' Action Memos, including ad planners and floor resets.

25         On the other hand, the Court agrees with defendants' objection that the request for
26  planogram documents is overly broad and unduly burdensome.  Generally, a discovery
27  request without any temporal or other reasonable limitation is objectionable on its face as
28  overly broad. *See, e.g., Ehrlich v. Union Pac. R.R. Co.*, 302 F.R.D. 620, 625 (D. Kan.

1   2014); *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 541-542 (D. Kan. 2006). A

2   document request or interrogatory is also overly broad or unduly burdensome on its face if

3   it: "(1) uses an omnibus term such as 'relating to' or 'concerning,' and (2) applies to a

4   general category or group of document or a broad range of information." *Moses v.*

5   *Halstead*, 236 F.R.D. 667, 672 (D. Kan. 2006). "Despite the overly broad nature of [a

6   discovery request], a party typically has a duty to respond to it to the extent the [discovery

7   request] is not objectionable and can be narrowed to an appropriate scope." *Id.* "This rule

8   does not apply, however, and the Court will not compel further response, when inadequate

9   guidance exists to determine the proper scope of the [discovery request]." *Id.* In addition,

10  when a discovery request "is overly broad on its face or when relevancy is not readily

11  apparent, the party seeking discovery has the burden to show the relevancy of the request."

12  *Johnson v. Kraft*, 236 F.R.D. at 542 n.20 (citing *Owens v. Sprint/United Mgmt. Co.*, 221

13  F.R.D. 649, 652 (D. Kan. 2004)).

14          Defendants have agreed to "produce a three-month sample of Action Memos, which

15  will include ad planners and floor resets, as well as other documents sent to a single store."

16  [Doc. No. 183, at pp. 81-82.] Notably, plaintiffs fail to acknowledge this proposal in the

17  Motion, and also fail to argue why it is insufficient or too narrow. Instead, plaintiffs stand

18  on their overly broad request for "all planograms, ad planners, floor resets, floor plans and

19  all other documents providing instruction concerning the layout of the stores where the

20  Subject Plaintiffs worked," notwithstanding there is no date limitation, limitation on the

21  number of stores, or other reasonable limitations on the scope of discovery to be produced

22  in response to this request.

23          The Court finds that defendants' proposed limitation of a three-month sample of

24  Action Memos sent to a single store is too narrow based on the allegations in plaintiffs'

25  operative Complaint. Accordingly, the Court **ORDERS** defendants to produce a three-

26  month sample of Action Memos for the stores where the 30 Opt-In Deponents worked.

27  / / /

28  / / /

# III.   CONCLUSION

For the foregoing reasons, the Joint Motion is **DENIED**. [Doc. No. 183.]

1.   Plaintiffs' request for an in-person discovery conference is **DENIED**.

2.   Plaintiffs' Motion to Compel defendants' collection, search and production of ESI at the regional and corporate-level is **DENIED**.

3.   Plaintiffs' Motion to Compel a further response to plaintiffs' Interrogatory No. 5 in plaintiffs' RFP 3 is **DENIED**.

4.   Plaintiffs' Motion to Compel a further response to plaintiffs' Interrogatory No. 6 in plaintiffs' RFP 3 is **DENIED**.

5.   Plaintiffs' Motion to Compel a further response to plaintiffs' Interrogatory No. 7 in plaintiffs' RFP 3 is **DENIED**.

6.   Plaintiffs' Motion to Compel a further response to plaintiffs' Interrogatory No. 8 in plaintiffs' RFP 3 is **DENIED**.

7.   Plaintiffs' Motion to Compel a further response to plaintiffs' Requests for Production Nos. 1-6 and 8-10 is **DENIED**.

8.   Plaintiffs' Motion to Compel the production of text messages sent or received by GMs and DMs, in connection with plaintiffs' Requests for Production Nos. 1-3 in plaintiffs' RFP 3, is **DENIED**.

9.   Plaintiffs' Motion to Compel the production of internet messages, tweets and posts on social media made or received by the Discovery Opt-Ins' GMs or DMs, in connection with plaintiffs' Requests for Production Nos. 1-5 AND 9-10 in plaintiffs' RFP 3, is **DENIED**.

10.   Plaintiffs' Motion to Compel a further response to plaintiffs' Request for Production No. 7, is **GRANTED** in part and **DENIED** in part.  Defendants are ordered to produce a three-month sample of Action Memos for the stores where the 30 Opt-In Deponents worked.

11.   To the extent defendants have not produced responsive documents sought that it has agreed to produce to any of the discovery requests herein, defendants are

3:13cv644L(KSC)

1         **ORDERED** to produce them within <u>**twenty (20)**</u> days of the date of this Order.

2

3   **IT IS SO ORDERED.**

4   Date: March *10*, 2017

5

6

7                       KAREN S. CRAWFORD

8                       United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:13cv644L(KSC)